IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAR 07 2006

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

IRENE BILLINGSLEA, NICHELLE
GRIFFIN, JWANA McNEAL, and
MONIQUE KITA WILLIAMS

        Plaintiffs,

v.

BRAYSON HOMES, INC.

        Defendant.

CIVIL ACTION NO.

1:04-CV-00962-JEC

## O R D E R  &  O P I N I O N

This case is presently before the Court on Defendant's Motion for Summary Judgment [33] AND Defendant's Motion for Consideration of Its Summary Judgment and Response to Plaintiffs' Motion to Dismiss Defendant's Motion for Summary Judgment [37]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that Defendant's Motion for Summary Judgment [33] should be **DENIED** AND Defendant's Motion for Consideration of Its Summary Judgment and Response to Plaintiffs' Motion to Dismiss Defendant's Motion for Summary Judgment [37] should be **GRANTED**.

AO 72A
(Rev.8/82)

**BACKGROUND**

Defendant in this action, Brayson Homes, Inc. ("Brayson") is a residential home builder that purchases parcels of land located in and around Atlanta, Georgia to be developed and subdivided into smaller parcels of land to form new subdivision communities. (Statement of Material Facts ("DSMF") [32] at ¶¶ 1-2.) Plaintiffs in this action, Irene Billingslea, Nichelle Griffin, Jwana McNeal, and Monique Kita Williams,[1] were real estate salespersons hired by defendant to sells homes in Brayson communities. (*Id.* at ¶ 3.) Each plaintiff was assigned to work in a specific Brayson community, and was responsible for selling homes on the various subdivided lots within that community. (*Id.* at ¶ 11.) Plaintiffs were expected to greet potential home buyers at the model home sales centered located in each community. (*Id.* at ¶ 12.)

As set forth in the "Sales Agent Job Description," plaintiffs were expected to staff and operate the model home sales center in the community to which they were assigned for set hours, ranging

---

[1]    Plaintiff Billingslea worked for Brayson's Lakeview community from December of 2002 through October of 2003. (DSMF at ¶ 13.) Plaintiff McNeal worked for Brayson's Saddlebrook and The Meadows at Saddlebrook communities from 2002 through 2003. (*Id.* at ¶ 14.)    Plaintiff Griffin was a floater between Brayson communities, working most often for Brayson's Overlook community. (*Id.* at ¶ 15.)    Plaintiff Williams worked for Brayson's Lake Overlook community from October of 2002 through July of 2003. (*Id.* at ¶ 16.)

2

from 10:00 a.m. to 7:00 p.m.,[2] depending on the day and the time of the year. (Sales Agent Job Description ("Job Description"), attach. as Ex. 3 to Mem. of Law in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Summ. J.") [32].)   Plaintiffs were also expected to: arrive at the model home thirty minutes prior to official office hours; maintain the model home and grounds in each subdivision at the highest level of cleanliness and orderliness; keep updated marketing and product information on hand at all times; keep a copy of homeowner's association by-laws and restrictive covenants on-site and be familiar with their contents; complete all purchase agreements; maintain a file of all floor plans and decorating selections; keep complete records on all buyers from contract through closing; maintain a file of prospect cards; handwrite thank you notes within forty-eight hours of a prospect's visit; inspect standing inventory homes daily; handle buyer complaints and change orders; keep posted on the progress of all loans; fax in weekly sign-up and closing reports; maintain a monthly calendar of

---

[2]   During the summer, plaintiffs were required to staff and operate the model home in their respective communities during the following hours: Monday through Thursday from 11:00 a.m. to 7:00 p.m., Friday from 11:00 a.m. to 6:00 p.m., Saturday from 10:00 a.m. to 6:00 p.m., and Sunday from 12:00 p.m. to 6:00 p.m.   During the winter, the hours were Monday through Friday from 11:00 a.m. to 6:00 p.m., Saturday from 10:00 a.m. to 6:00 p.m., and Sunday from 12:00 p.m. to 6:00 p.m. (Job Description, attach as Ex. 3 to Def.'s Summ. J.)

3

AO 72A
(Rev.8/82)

scheduled days off; place "sold" signs on all appropriate lots; coordinate construction schedules with construction personnel; insure proper broker and customer relations; develop and distribute neighborhood flyers; attend educational seminars and motivational meetings on a regular basis; and cooperate with the introduction of new salespeople to the company. (*Id.*)

In conjunction with their work, plaintiffs were customarily and routinely required to leave the model home to show prospective home buyers the spec houses and lots within the community. (DSMF at ¶ 18.)   Plaintiffs were also required to attend off-site sales meetings approximately four times per month. (*Id.* at ¶ 20.)   In addition to the four formal sales meetings, plaintiffs' sales manager held additional off-site informal sales meetings that plaintiffs were required to attend. (*Id.* at ¶ 22.)  Plaintiffs also attended Homebuyer's Assistance Foundation meetings in Jonesboro, Georgia and monthly educational seminars at the Holiday Inn in Marietta, Georgia. (*Id.* at ¶¶ 24-25.)   Plaintiffs were also required to regularly attend weekly construction meetings and to travel frequently, from one time per week to every other day, to the corporate office located in Duluth, Georgia. (*Id.* at ¶¶ 26-27.) One to two times per week, plaintiffs would leave their respective Brayson communities to deliver flyers to the offices of local agents and brokers.   (*Id.* at ¶ 32.)

4

As part of the hiring process, each of the plaintiffs signed an "Independent Contractor Agreement" with Brayson. (Independent Contractor Agreements, attach. as Ex. 2 to Def.'s Summ. J.) Based on this and the job activities described above, defendant classified plaintiffs as "outside salespersons" exempt from the minimum wage and overtime pay requirements of the Fair Labor Standards Act ("FLSA"). Plaintiffs, who were paid only on commission earned at the close of each transaction,[3] dispute that they are exempt from the FLSA, and have brought this action to recover unpaid wages and overtime. (See DSMF at ¶ 6; Pls.' Resp. to Def.'s Statement of Material Facts ("Pls.' Resp. DSMF") [36] at ¶ 4.) Insisting that, as a matter of law, plaintiffs are exempt from the minimum wage and maximum hour requirements of the FLSA, defendant has moved for summary judgment. (Def.'s Summ. J. at 2.)

## DISCUSSION

### I.   Summary Judgment Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

---

[3]   During her tenure with Brayson, plaintiff Williams never sold any homes and thus received no compensation for her ten months of work. (DSMF at ¶¶ 16-17.)

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c)).

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits.   Instead, Rule 56 of the Federal Rules of Civil Procedure *mandates* the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  *Id.* at 322-23.

The movant bears the initial responsibility of asserting the basis for his motion.  *Id.* at 323; *Apcoa, Inc. v. Fidelity Nat'l Bank*, 906 F.2d 610, 611 (11th Cir. 1990).  The movant is not required to negate his opponent's claim, however.  The movant may discharge his burden by merely "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.  After the movant has carried his burden, the nonmoving party is then required

6

to "go beyond the pleadings" and present competent evidence[4] designating "'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting FED. R. CIV. P. 56(e)). While the court is to view all evidence and factual inferences in a light most favorable to the nonmoving party, *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir. 2003), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A fact is material when it is identified as such by the controlling substantive law. *Id.* at 248. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249-50. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations

---

[4]   The nonmoving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *Celotex*, 477 U.S. at 324.

AO 72A
(Rev.8/82)

omitted).   An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson,* 477 U.S. at 249-50.  Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of *every* element material to that party's case so as to create a genuine issue for trial.

## II.  Outside Salespersons and the FLSA

In recognition of how difficult it would be for employers to control the hours of salespersons who spend their time calling on customers and prospects outside of the office, the FLSA exempts from its minimum wage and maximum hour requirements, "any employee employed . . . in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary . . . )." 29 U.S.C. § 213(a)(1) (2006).

### A.   Applicable Regulatory Provisions

The administrative regulations applicable to this case provide:

General rule for outside sales employees.
(a) The term 'employee employed in the capacity of outside salesman' . . . shall mean an employee:
    (1) Whose primary duty is:
        (i) making sales within the meaning of section

8

3(k) of the Act,[5] or
(ii) obtaining orders or contracts
for services or for the use of
facilities for which a consideration
will be paid by the client or
customer; and
(2) <u>Who is customarily and regularly engaged away
from the employer's place or places of business</u> in
performing such primary duty.

(b) The term 'primary duty' is defined at § 541.700.  In
determining the primary duty of an outside sales
employee, work performed incidental to and in conjunction
with the employee's own outside sales or solicitations,
including incidental deliveries and collections, shall be
regarded as exempt outside sales work.  Other work that
furthers the employee's sales efforts also shall be
regarded as exempt work including, for example, writing
sales reports, updating or reviewing the employee's sales
or display catalogue, planning itineraries and attending
sales conferences.

29 C.F.R. § 541.500 (2006). (emphasis added)[6]  The regulations

define "away from the employer's place or places of business" to

mean the following.

Away from employer's place of business.
An outside sales employee must be customarily and
regularly engaged 'away from the employer's place or
places of business.' <u>The outside sales employee</u> is an
employee who <u>makes sales at the customer's place of
business</u> or, if selling door-to-door, <u>at the customer's</u>

---

[5]   "Sales within the meaning of section 3(k) of the Act
include the transfer of title to tangible property." 29 C.F.R. §
541.501(b) (2006).

[6]   The above language of § 541.500 reflects changes made to
the regulation effective April 23, 2004. *See* Defining and
Delimiting the Exemptions for Executive, Administrative,
Professional, Outside Sales and Computer Employees, 69 Fed. Reg.
22,122 (2004).

9

home.  Outside sales does not include sales made by mail, telephone or the Internet unless such contact is used merely as an adjunct to personal calls.  Thus, any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business, even though the employer is not in any formal sense the owner or tenant of the property.  However, an outside sales employee does not lose the exemption by displaying samples in hotel sample rooms during trips from city to city; these sample rooms should not be considered as the employer's places of business.  Similarly, an outside sales employee does not lose the exemption by displaying the employer's products at a trade show.  If selling actually occurs, rather than just sales promotion, trade shows of short duration (i.e., one or two weeks) should not be considered as the employer's place of business.

29 C.F.R. § 541.502 (2006) (emphasis added).  As used in § 541.500, "primary duty" is defined to mean:

Primary duty.
(a) To qualify for exemption under this part, an employee's 'primary duty' must be the performance of exempt work.  The term 'primary duty' means the principal, main, major or most important duty that the employee performs.  Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole.  Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R § 541.700 (2006).

## B.   Arguments of Both Parties

Defendant concedes that neither the FLSA, nor the regulations

10

which accompany it, specify whether a real estate salesperson
working in a subdivision site containing a model home is considered
to be an exempt outside salesperson.  In support of its motion for
summary judgment, defendant does offer an April 21, 1964 opinion
letter from the Department of Labor's Wage-Hour Administrator.
(Def.'s Summ. J. at 4.)  In this opinion letter, the administrator
indicates that a real estate salesman who uses a model home as his
"headquarters" may be considered an outside salesperson who is
customarily and regularly engaged away from his employer's place or
places of business.   The administrator offered the following
reasoning to support his conclusion:

> [r]eal estate salesmen . . . as a customary and regular
> part of their employment . . . spend whatever time is
> necessary at the site of property to be sold and in
> visiting prospects at the latter's homes and offices as
> a part of their sales effort.  Most of them must leave
> whatever place of business of the employer they use as
> headquarters in order to perform these tasks.  In the
> case of salesmen stationed in a model home on a tract
> from which parcels of real property are being sold with
> or without improvements, leaving the model home for such
> purposes, customarily and regularly, would meet the
> requirement of the definition, so far as making sales
> 'away from' the employer's place of business is
> concerned.  This is true even though all of the property
> shown to prospects by the salesman is within the tract on
> which the model home is located.
>
> Further, not every home called a 'model home' would be a
> place of business of the employer.  One which is in the
> nature of an 'open house' to which a salesman is assigned
> to meet prospects who may buy that house or another
> similar one on the tract may more properly be viewed as
> analogous  to  the  hotel  sample  room  of  a  traveling

11

salesman referred to in 29 C.F.R. § 541.502(b) than to an
actual place of business of the employer. Transitory
assignments of salesman permanently headquartered at an
office of the employer who are sent to a 'model home' or
other location at a tract where it will be their duty to
engage in sales efforts with respect to real estate on
the tract would not defeat an otherwise applicable
exemption. The salesmen would ordinarily be considered
to be engaged in such work 'away from' the employer's
place of business. On the other hand, where for purposes
of convenience a 'model home' on a real estate
development is maintained on a relatively permanent basis
as an office of the employer, staffed with necessary
personnel for making sales, salesmen who do not
customarily and regularly leave this headquarters as a
part of their sales efforts would be 'inside' rather than
'outside' salesmen just as they would be if confined to
such inside work in any other office maintained by the
employer. In the case of real estate salesmen, however,
this would appear to be the unusual, rather than the
usual, case. So long as the salesman customarily and
regularly goes to the site of the property or to
prospects as a part of making his sales, this requirement
for 'outside' sales work would be met. Moreover, time
spent on return to the model home or other headquarters
to conclude a sales transaction or to continue sales
effort with the prospect would be deemed part of the
salesman's outside sales activity.

Wage and Hour Div. Op. Letter, April 21, 1964, available at 1964

DOLWH LEXIS 198.

Defendant contends that the above letter supports its motion

for summary judgment and emphasizes that plaintiffs were routinely

required to perform numerous duties outside both the model home and

the community in which they were based. (Def.'s Summ. J. at 6.)

More specifically, defendant points out that plaintiffs were

regularly called upon to leave their respective model homes in

12

order to walk lots and spec homes within their communities, attend weekly sales meetings outside their communities, attend monthly or weekly construction meetings outside their communities, visit outside agents and brokers twice a week, and travel to the corporate office in Duluth, Georgia at least once per week. (*Id.*)

In response, plaintiffs cite to a January 31, 1964 opinion letter from the Department of Labor's Wage-Hour Administrator. (Pls.' Resp. to Def.'s Mot. for Summ. J. ("Resp. Summ. J.") [36] at 4.)   In this letter, when asked whether the outside salesman exemption was "applicable to sales agents employed by a real estate broker or firm to obtain contracts from interested buyers for the purchase of a home built, or to be built, by Builder A, where the duties of such agents are performed at the site of model homes constructed by Builder A and away from the office premises of the real estate broker or firm," the administrator answered, "where a salesman is stationed at a fixed site, such as a model home, at which he receives prospective buyers and attempts to sell similar homes to be built on that or other sites, the model home constitutes one of 'his employer's places of business', and the exemption consequently does not apply." Wage and Hour Div. Op. Letter, January 31, 1964, available at 1964 DOLWH LEXIS 156.

This above language from the January 31st letter supports plaintiffs' position.   Its viability is greatly undermined,

13

however, by the April 21st letter, relied upon by defendant, *supra,* which later letter was specifically drafted to clarify misunderstandings arising out of the very language from the administrator's January 31st letter upon which plaintiffs attempt to rely. In the administrator's own words, "[t]he broad language of the statement in the [January 31, 1964] letter apparently led you to believe that salesman using such a model home as headquarters would not, as a rule, be considered exempt as outside salesmen. This is not so." Wage and Hour Div. Op. Letter, April 21, 1964, available at 1964 DOLWH LEXIS 198. Given the administrator's own clarification, which essentially disavows his January 31, 1964 letter, the Court concludes that it must look to the language of the administrator's later, April 21, 1964 opinion letter, and not the earlier January letter.

Plaintiffs also cite a district court decision that plaintiffs contend to have "overturned" the administrator's April 21, 1964, opinion letter, to wit: *Brennan v. Modern Chevrolet Co.,* 363 F. Supp. 327 (N.D. Tex. 1973). (Resp. Summ. J. at 5-8.) This district court decision did not "overturn" the administrative opinion letter in question. The *Brennan* decision, however, addresses a very analogous situation and to the extent the Court is not bound by the April 1964 opinion letter, (*see* discussion, *infra*), it finds the district court's reasoning to be persuasive. Specifically, in

14

*Brennan*, the employer car dealer argued that its new and used car salesmen were outside salesmen exempt from the FLSA's minimum wage and overtime provisions. Evidently, the employer based its outside salesmen exemption on the fact that its salesmen regularly traveled from the dealer's inside showroom to the dealer's outside car lot. *See id.* at 330-31. The *Brennan* court rejected this argument outright stating, "the employees . . . were not engaged in their activities away from the place of business of their employer, but in fact were employed to work on the premises of the employer at their showrooms and car lots. The regulations of the Department of Labor . . . provide that to qualify for the exemption of outside salesmen the employee must be customarily and regularly engaged away from his employer's place or place (*sic.*) of business. The facts are exactly opposite in this case and no such exemption is available." *Id.* at 331.

As noted, *infra*, the Court finds *Brennan* to be analogous to this case and its reasoning to be persuasive.

## C.   Away From the Employer's Place or Places of Business

Plaintiffs argue at length that their non-sales duties exceeded "20 percent of the hours worked in the workweek by nonexempt employees of the employer," thereby precluding plaintiffs from being considered outside salespersons. (Resp. Summ. J. at 8-9.) This argument is based on a now defunct version of 29 C.F.R.

15

§ 541.500(b) which, in lieu of the current "primary duty" language
of 29 C.F.R. § 541.500(b), provided:

> Whose hours of work of a nature other than that described
> in paragraph (a)(1) or (2) of this section do not exceed
> 20 percent of the hours worked in the workweek by
> nonexempt employees of the employer: Provided, that work
> performed incidental to and in conjunction with the
> employee's own outside sales or solicitations, including
> incidental deliveries and collections, shall not be
> regarded as exempt work.

Defendants also cite this old regulation. The Court does not
know whether the parties cite an old regulation because they are
unaware of the new regulation, or whether it is their position that
the newer regulation should not be given retroactive effect to
incidents occurring in 2002-03. To the extent that the "old"
regulation applies, however, plaintiffs make a strong argument that
their non-sales duties did exceed 20% of their duties.

In the end, the Court does not have to decide this question
because it has concluded that even if plaintiffs' "primary duty
[was] making sales within the meaning of section 3(k) of the Act,"
plaintiffs were not "customarily and regularly engaged <u>away from
the[ir] employer's place or places of business</u>." 29 C.F.R §
541.500(a) (2006)(emphasis added). That being so, plaintiffs were
not outside salesmen.

Specifically, while "an exemption from the [FLSA's] overtime
pay requirement exists for . . . outside salesman, as defined by

16

regulations of the Secretary . . . [t]he employer carries the burden of proving the exemption, and we narrowly construe the overtime provisions of Section 207 against the employer." *Hogan v. Allstate Ins. Co.*, 361 F.3d 621, 625 (11th Cir. 2004)(internal citations and quotations omitted). In deciding whether plaintiffs are subject to the "outside salesman" exemption, the Court must look to both the language of the statute and its accompanying regulations. Indeed, the plain language of § 13(a) expressly makes the Department of Labor's regulations part of the law.[7] *Skipper v. Superior Dairies, Inc.*, 512 F.2d 409, 413 (5th Cir. 1975).[8]   In contrast to the statute and regulations, opinion letters issued by the Department of Labor do not control this Court's decision. *Arriaga v. Florida Pacific Farms, L.L.C.*, 305 F.3d 1228, 1238 (11th Cir. 2002).

Instead, the rulings, interpretations, and opinions of the Department of Labor's FLSA administrator "constitute a body of experience and informed judgment to which courts and litigants may

---

[7]   The relevant language provides, ". . .or in the capacity of outside salesman (<u>as such terms are defined and delimited</u> from time to time <u>by regulations</u> of the Secretary . . .)." 29 U.S.C. § 213(a)(1) (2006) (emphasis added).

[8]   Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

17

properly resort for guidance." *Id.* (citing *Skidmore v. Swift*, 323 U.S. 134, 140 (1944)). However, "[t]hat the opinion letters should be considered . . . does not render them dispositive." *Id.*   To decide how much deference to give an opinion letter the Court must consider "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.* (citing *Skidmore*, 323 U.S. at 140). Said differently, "[i]nterpretations contained in formats such as opinion letters are entitled to respect . . . but only to the extent that those interpretations have the power to persuade." *Id.* (citing *Christensen v. Harris County,* 529 U.S. 576, 587 (2000)).   In this case, the Court is not persuaded by the reasoning or conclusion of the Department of Labor's April 21, 1964 opinion letter.

The truly "outside salesman" makes his living by calling on customer's at their place of business or home.  This is why, the Department of Labor's regulations state that, "[t]he outside sales employee is an employee who makes sales <u>at the customer's place of business</u>, or, if selling door-to-door, at the customer's home." 29 C.F.R. § 541.502 (2006)(emphasis added).  Such a job typically involves a lot of travel--either local or out-of-town--as well as irregular hours.  The hours are irregular because, to successfully

18

call on customers at their homes and businesses, one must adopt the hours of one's customers, rather than the more structured hours of one's employer.

This reality makes it difficult, if not impossible, for an employer to set or control the hours of a salesman working outside of the office. Presumably, in recognition of this fact, Congress excluded the "outside salesman" from the FLSA's wage and hour provisions. That is, given the inherent difficulty in predicting and controlling the work hours of this kind of salesmen, it makes sense not to burden employers with tracking and compensating the overtime hours of such employees. This practical reality justifies the "outsides salesman" exemption, but only when the employee really is "customarily and regularly engaged away from the employer's place or places of business." *See* 29 C.F.R. § 541.500 (2006).

The Court concludes that, under the undisputed facts of this case, plaintiffs were not customarily and regularly engaged away from defendant's place of business. In reaching this determination, the first question is obviously whether plaintiffs' primary duties caused them to be regularly engaged away from defendant's place of business. To answer that question, one first needs to identify the site of defendant's place of business. As to each plaintiff, the defendant's place of business was the

19

subdivision community of new homes within which the particular plaintiff was assigned.  More particularly, most of plaintiff's duties appear to have been performed in the model home within the community.  At the model home, the plaintiffs had various duties to perform to keep the model home up to standards.  Most importantly, whenever a prospective customer came to the model home, the plaintiff would take the customer out to one of the newly constructed homes and show that home to the customer.

Defendant relies solely on the 1964 Opinion Letter to support its argument that plaintiffs' sales duties regularly took them away from their employer's place of business.  This Opinion Letter essentially reasoned that the primary duties of the employees at issue consisted of showing homes on the construction site and that, in each instance when an employee left the model home where she was otherwise stationed to show a home on the site, the employee was necessarily leaving the employer's place of business.

First, the Court notes some factual distinctions between the duties of the employees being considered in the 1964 Opinion Letter and the duties of the employees before this Court.  Specifically, the administrator-author of the April 1964 letter was reviewing the duties of real estate agents who, in addition to showing prospects property within the subdivision where the model home was located, also customarily and regularly visited prospects at the latter's

20

homes and offices. *Id.* ("Real estate salesmen, as you pointed out, typically are required, as a customary and regular part of their employment, to spend whatever time is necessary at the site of property to be sold and in visiting prospects at the latter's home and offices as a part of their sales effort."). Here, while plaintiffs did on occasion deliver advertising materials to local agents and brokers, there is no evidence that plaintiffs ever visited prospects at their homes or offices.

Nevertheless, to the extent that the Opinion Letter might be deemed to address a factual scenario substantially similar to the one at issue in this litigation, the Court finds the reasoning in that letter to be unpersuasive[9] and at odds with the Department of Labor regulation, which provides that "[t]he outside sales employee is an employee who makes sales at the customer's place of business or, if selling door-to-door, at the customer's home." 29 C.F.R. § 541.502 (2006)(emphasis added). Specifically, the administrator concludes that the model home was effectively the employer's place of business and that, by walking a few yards away to show a new

---

[9]   As to the standards for evaluating opinion letters, cited *supra*, the parties do not discuss the degree to which this 1964 Opinion Letter is consistent with earlier or later pronouncements and the Court likewise does not know whether this letter is consistent, inconsistent, or an isolated opinion on the matter. AS to the thoroughness and validity of the reasoning, as discussed *infra*, the Court does not find the reasoning to be thorough or valid, but instead to be conclusory.

home on the same site, the employee had thereby traveled away from the employer's place of business and should thus be deemed an outside salesman.[10]  In the Court's opinion, this reasoning fails the common sense test.

Here, the plaintiffs were required to staff and operate the model home sales center and to show, to prospective customers who showed up at the site, lots and homes within the particular subdivision site on which the model home was situated.   Thus, plaintiffs operated within a very circumscribed area under the defendant's control.   Further, unlike a traditional outdoor salesman, who determines his own hours, plaintiffs were subject to a rigid schedule that was totally within the discretion of their employer.   Plaintiffs were essentially working in a warehouse without walls, whose perimeters were defined by the boundaries of the subdivision.

Just as a sales clerk in a retail store would be expected to walk away from the check-out/cash register area to assist a

---

[10]   In his April 1964 opinion letter the administrator concluded, "[i]n the case of salesmen stationed in a model home on a tract from which parcels of real property are being sold with or without improvements, leaving the model home . . . would meet the requirement of the definition, so far as making sales 'away from' the employer's place of business is concerned.  This is true even though all of the property shown to prospects by the salesman is within the tract on which the model home is located." Wage and Hour Div. Op. Letter, April 21, 1964, available at 1964 DOLWH LEXIS 198 (emphasis added).

customer who needs help finding particular merchandise, the plaintiffs left their central area to assist prospective customers who wished to look at "merchandise" on this real estate site. That a retail sales clerk is surrounded by walls, whereas the plaintiffs here had to walk out of doors to show their wares, appears to be a distinction without any difference that could conceivably be relevant to the policy goals behind the outside sales employee exemption. Thus, just as a retail sales clerk is not deemed to be an outside salesperson, this Court concludes that plaintiffs did not morph into outside salesmen just because they literally walked outside to assist customers.

In short, plaintiffs' primary duty was not to make sales <u>away</u> from their employer's place of business; their primary duty was to assist in making sales <u>within</u> their employer's place of business,[11]

---

[11]   In support of their argument that plaintiffs were outside salespeople, defendants note that plaintiffs were also required to attend off-site sales and construction meetings during the year, as well as to attend educational seminars.  The Court is not clear how the above fact helps defendant's argument.  Admittedly, attendance at these meetings took the plaintiffs away from the subdivision site into the out-of-doors to get to these meetings.  Yet, the "outside sales employee" exemption has two components: "outside" and "sales employee".  When the plaintiffs attended these required meetings, they were concededly leaving and going "outside" of their regularly assigned duty stations.  Yet, in attending these meetings, the plaintiffs were not trying to sell anything, albeit they were attempting to improve their salesmanship skills. Moreover, the plaintiffs had no discretion about attending these meetings, whose times were set by the defendant.

23

which this Court construes to be the entire subdivision site to which they were assigned and from which they could not leave during their assigned work day.[12]

The Court thus concludes that defendant has failed to meet its burden of proving that the plaintiffs were "customarily and regularly engaged away from the[ir] employer's place or places of business . . ." 29 C.F.R. § 541.500 (2006). Having failed to persuade the Court that plaintiffs were subject to the "outside salesman" exemption from the FLSA's minimum wage and overtime pay provisions, the plaintiffs are thus entitled to receive any unpaid minimum wage and overtime. For the above reasons, the Court **DENIES** Defendant's Motion for Summary Judgment [33].

## III.   Future Proceedings

For reasons unclear to this Court, plaintiffs did not file a motion for summary judgment. Typically, denial of a defendant's motion for summary judgment means that the Court would schedule a trial. Yet, it appears to the Court that there are no disputed factual matters that a jury would need to decide. If that is

---

[12]   The Court also finds unpersuasive defendants' argument that because each subdivision site was in a separate location than the defendants' central office in Duluth, Georgia, any sales person at any such site was necessarily engaged in work away from his employer's place of business. An employer's place of business is not limited to its headquarters, however. See 29 C.F.R. § 541.502 (2006).

accurate, then it is up to this Court to determine the legal characterization that should be given to the undisputed facts before it. With the above discussion, the Court has concluded that plaintiffs were not subject to the outside sales exemption. Plaintiff has not indicated what specific monetary relief should be awarded, given such a legal conclusion. Specifically, plaintiff has not filed with the Court any record of the hours worked or commissions earned by each of the plaintiffs. Though neither party has briefed the issue, the Court assumes that employees who work entirely off of commission must receive compensation of at least the applicable minimum wage for each hour worked in each workweek. *See generally* ELLEN C. KEARNS, THE FAIR LABOR STANDARDS ACT §9.IV.C (BNA Books 1999). Non-exempt employees who are paid on a commission basis are also entitled to receive overtime. *Id.*

In short, the Court has not been provided with the information necessary for the Court to fashion a final order of relief. Therefore, the Court directs the plaintiffs to file, within **forty-five (45) days** from the date of this Order, a summary judgment-like motion that will set out the hours worked by each plaintiff, the commissions earned, and the  amount of recovery appropriate for each plaintiff. To the extent that there may be a factual dispute about the hours worked or the compensation received, such that a motion for summary judgment may not be entirely apt, plaintiffs

shall identify any such disputes in a memorandum that <u>thoroughly</u> addresses the above issues. The Court does not intend to search through the record in an effort to calculate the award due to the plaintiffs.

After the plaintiffs have filed their motion for summary judgment or memorandum, defendant shall respond, within **thirty (30) days**, indicating whether the defendant disagrees with any of plaintiffs' calculations. Any assertion by defendant or the plaintiffs should be supported by a citation to the record or by appropriate attachments supporting the assertion.

### CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion for Summary Judgment [33] AND **GRANTS** Defendant's Motion for Consideration of Its Summary Judgment and Response to Plaintiffs' Motion to Dismiss Defendant's Motion for Summary Judgment [37].

SO ORDERED, this ___7___ day of March, 2006.

_____
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

26