IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C.

MAR 15 2007

JAMES N. HATTEN
By: _____ Deputy Clerk

IRENE BILLINGSLEA, NICHELLE GRIFFIN, JWANA McNEAL, and MONIQUE KITA WILLIAMS,

    Plaintiffs,

v.

BRAYSON HOMES, INC.,

    Defendant.

CIVIL ACTION NO.
1:04-CV-00962-JEC

### ORDER & OPINION

This case is presently before the Court on Defendant's Renewed Motion for Summary Judgment [45]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that Defendant's Renewed Motion for Summary Judgment [45] should be **DENIED**. Also, today the Court narrows the issues that will be presented to a jury in this case as it works towards determining the amount of final relief to be awarded in this case.

### BACKGROUND

Although not authorized to do so, defendant has elected to file a second "Renewed Motion for Summary Judgment." Defendant's filing of this motion is particularly perplexing given that the Court already denied defendant's motion for summary judgment on precisely

the same issues presented by defendant in its renewed motion. (*See* Order [40].)

To wit, in its March 7, 2006 Order in this case, the Court considered whether plaintiffs in this action, real estate salespersons hired by defendant to sell homes in defendant's new subdivision communities, were "outside salespersons" exempt from the minimum wage and overtime pay requirements of the Fair Labor Standards Act ("FLSA"). (*Id.* at 5.) Plaintiffs, who were paid only on commission earned at the close of each transaction, argued that they were not exempt from the FLSA, and sought to recover unpaid wages and overtime. (*Id.*)

In deciding the issue, the Court reviewed various administrative regulations outlining the parameters of the outside salesperson exemption. (*See id.* at 8-10)(setting out 29 C.F.R. § 541.500, 29 C.F.R. § 541.502, and 29 C.F.R. § 541.700). The Court also considered two opinion letters issued by the Department of Labor's Wage-Hour Administrator, and an analogous case from the United States District Court for the Northern District of Texas. (*See id.* at 11-14, 17-24.) Having done so, the Court definitively concluded that "plaintiffs were not 'customarily and regularly engaged <u>away from the[ir] employer's place or places of business</u>.'" (*Id.* at 16)(citing 29 C.F.R. § 541.500(a) (2006))(emphasis in original). Because an employee must be customarily and regularly engaged away from their

employer's place or places of business in order to qualify for the outside salesperson exemption from the FLSA, the Court held that plaintiffs were entitled to receive any unpaid minimum wage and overtime. (*Id.* at 24.) Consistent with the Court's conclusion and holding, the Court also denied defendant's first motion for summary judgment. (*Id.*)

The Court then went on to indicate that, for reasons unclear to the Court, plaintiffs had neglected to file their own motion for summary judgment. This omission seemed odd as there appeared to be no disputed factual matters that a jury would need to decide, meaning that it was up to the Court to determine the legal characterization that should be given to the undisputed facts before it. (*Id.* at 25.) However, not having been provided with any record of the hours worked or commissions earned by each of the plaintiffs, the Court indicated that it was unable at the time of its March 7th Order to fashion a final order of relief. The Court, therefore, directed plaintiffs to file, within forty-five days, a "summary judgment-like" motion that set out the hours worked by each plaintiff, the commissions earned, and the amount of recovery appropriate for each plaintiff. (*Id.*) The Court further instructed that, "[t]o the extent that there may be a factual dispute about the hours worked or the compensation received, such that a motion for summary judgment may not be entirely apt, plaintiffs shall identify any such disputes in a memorandum that

<u>thoroughly</u> addresses the above issues. *The Court does not intend to search through the record in an effort to calculate the award due to the plaintiffs.*" (*Id.* at 25-26)(italicized emphasis added, underlined emphasis in original). The Court gave defendant thirty days from plaintiffs' filing of their summary judgment-like motion to respond and indicate whether defendant disagreed with any of plaintiffs' calculations. (*Id.* at 26.)

Plaintiffs filed their memorandum addressing the relief to be awarded in this case on April 21, 2006. (*See* Pls.' Resp. to the Court's Order Dated March 7, 2006 ("Pls.' Resp. [42]".) Defendant responded to plaintiffs' submission on May 26, 2006. (*See* Def.'s Resp. to Pls.' Mem. in Resp. to the Court's Order Dated March 7, 2006 ("Def.'s Resp. [46]".) That same day, defendant filed its renewed motion for summary judgment. (Def.'s Renewed Mot. for Summ. J. ("Renewed Summ. J. [45]".) On June 15, 2006, plaintiffs filed a reply to defendant's response to plaintiffs' original memorandum addressing the relief to be awarded in this case. (Pls.' Reply to Def.'s Resp. to Pls.' Mem. in Resp. to the Court's Order Dated March 7, 2006 ("Reply Resp. [48]".)

## DISCUSSION

### I.  Defendant's Motion for Summary Judgment

Defendant's Renewed Motion for Summary Judgment [45] is, in all but its caption, a motion for reconsideration. Pursuant to L.R.

4

7.2E, NDGa, "[m]otions for reconsideration shall not be filed as a matter of routine practice. Whenever a party or attorney for a party believes it is absolutely necessary to file a motion to reconsider an order or judgment, the motion shall be filed with the clerk of court within ten (10) days after entry of the order or judgment." Thus, on top of being improperly styled a renewed motion for summary judgment, defendant's motion was also untimely. Any motion for reconsideration of the Court's March 7, 2006 Order, should have been filed by March 24, 2006.

"A motion for reconsideration is an extraordinary remedy and should only be granted when there is discovery of new evidence, an intervening change in controlling law, or a need to correct clear error." *Isotec Int'l, Inc. v. Stankiewicz Int'l* Corp., No. CIVA 1:04CV0788-JOF, 2006 WL 1553829, *1 (N.D. Ga. May 30, 2006)(Forrester, J.). Moreover, "motions for reconsideration may not be used as a vehicle to present the court with arguments which have already been raised and rejected, or to repackage familiar arguments to test whether the court will change its mind. Likewise, such motions may not be used to offer new legal theories or evidence that could have been presented in conjunction with the previously filed motion or response, unless a reason is given for failing to raise the issue at an earlier stage in the litigation." *Powell v. Barrett*, 376 F. Supp. 2d 1340, 1354 (N.D. Ga. 2005)(Story, J.)(internal citation

5

and quotation omitted).

Defendant's motion does nothing more than regurgitate the same facts and law that the Court considered in its first Order denying defendant's motion for summary judgment. (*See* Renewed Summ. J.) Defendant presents the exact same regulations, opinion letters, and cases to argue, again, that plaintiffs were outside salespersons exempt from the FLSA's wage and overtime requirements. Defendant also attempts to spin the facts of the case--the same facts the Court considered on the first go round--to make plaintiffs seem more like employees who were customarily and regularly engaged away from their employer's place or places of business. Again, absent some compelling reason for failing to raise an argument earlier, a motion for reconsideration "may not be used to offer new legal theories or evidence that could have been presented in conjunction with the previously filed motion or response." *See Powell*, 376 F. Supp. 2d at 1354.

Here, defendant has offered essentially nothing new in its motion for reconsideration. Further, defendant offers no explanation for why it previously failed to mention the few new facts it does introduce in its motion for reconsideration. The Court assumes that defendant found the facts to be pertinent after reading the Court's Order denying defendant's motion for summary judgment, but motions to reconsider are not appropriate merely because a litigant wishes a

second chance to make his argument. Defendant has not argued that new evidence has been discovered. There has been no intervening change in controlling law, and the Court finds no evidence or indication that a clear error was made. Accordingly, consistent with controlling case law precedent and the facts delineated above, the Court **DENIES** Defendant's Renewed Motion for Summary Judgment [45].

## II.  Form of Relief and Issues to Be Tried

First, it is helpful to make clear what form of relief is <u>not</u> available in this case. Here, in their memorandum addressing the relief to be awarded in this case, plaintiffs have tried, through the backdoor, to obtain damages that would be properly associated only with claims plaintiffs never advanced in this litigation. To wit, three of the four plaintiffs ask the Court to award $159,382.30 each as compensation for commissions they lost out on because they were terminated from defendant's employ. (*See* Pls.' Resp. [42 at Ex. 3].) Plaintiff McNeal requests $125,400.00, plaintiff Billingslea requests $75,124.25, and plaintiff Williams also requests $112,983.30, for "commissions due on houses sold." (*See id.*)

Plaintiffs' recovery of these sums is completely unsupported by the claims asserted in this case and was never contemplated by the Court's Order of March 7, 2006.[1] (*See* Compl. [1] at 5-7; Order [40].)

---

[1] Plaintiffs advanced four counts in their Complaint. Count One for "violation of FLSA by failure to pay minimum wage;" Count

At no time in this litigation have plaintiffs asserted any kind of claim for wrongful termination or the withholding of commissions. (See id.) Indeed, after the defendant objected to this introduction of entirely new claims, plaintiffs largely conceded the point:

> Plaintiffs understand that commissions are not covered by the FLSA. Plaintiffs included the commission as a separate item in their computations of lost income in an abundance of caution in their attempt to show the Court their total loss from employment with Defendant . . . The commission due are not part of the minimum wage and overtime due to Plaintiffs. Nonetheless, if the Court determines that commissions are part of the losses suffered by Plaintiffs and are compensable damages in this action, Plaintiff respectfully requests that the Court make a determination on the amount due and award the amount to the Plaintiffs in addition to the minimum wage and overtime due.

(Reply to Resp. [48 at 14-15].)

Of course, to determine what unpaid wages and overtime plaintiffs are owed, the Court must know what commissions plaintiffs <u>actually earned and collected</u>,[2] but otherwise, the Court cannot award

---

Two for "violation of FLSA by failure to pay overtime;" Count Three for "defendants' failure to pay minimum wage and overtime was intentional and willful;" Count Four for "defendants' failure to pay overtime." (Compl. [1] at 5-6.)

[2] Even at this late stage of the litigation, neither party has adequately briefed the issue. From its own research the Court understands that the amount due and owing plaintiffs should be equal to, calculated for each week: [((number of hours worked up to and including 40)*(minimum wage at $5.15)) + ((number of hours worked over forty)*(minimum wage at $5.15)*1.5)] − [total commissions <u>earned</u> for that week]. See 29 U.S.C. § 206(a)(1) (2006)(setting minimum wage at $5.15/hour); 29 U.S.C. § 207(a)(1) (2006)(establishing wages at one and one-half time the regular rate for any hours worked over forty in a week); 29 C.F.R. § 778.104

damages that are unconnected to the claims asserted in this case. As stated in the Court's March 7th Order, plaintiffs are entitled to recover unpaid minimum wages owed and overtime.

### A.    Hours Worked

With regard to the recovery of unpaid wages and overtime, the Court indicated in its last Order that plaintiffs should file a "summary judgment-like" motion that spelled out the hours worked by each plaintiff, the commissions earned, and the amount of recovery appropriate for each plaintiff. (Order [40] at 25.)  Though willing to fashion a final order of relief, based on the memoranda provided by both parties, the Court did indicate that, if there were a factual dispute about the hours worked or the compensation received, a summary judgment-like final order of relief would not be appropriate. (Sed id.)  As it turns out, there is substantial disagreement between the parties as to the number of hours actually worked by each

---

(2006)(establishing single workweek as standard for determining whether overtime is due, prohibiting an averaging of hours over two or more workweeks, stating "[i]t is therefore necessary to determine the hours worked and the compensation earned by pieceworkers and commission employees on a weekly basis."); 29 C.F.R. § 778.119 (2006)(establishing apportionment of commissions back over the workweeks of the period in which it was earned); see also ELLEN C. KEARNS, THE FAIR LABOR STANDARDS ACT §9.IV.C, §10.II.B (BNA Books 1999).

Of course, the above is just a rough estimate of the particular calculations that will need to be made by a jury at trial.

plaintiff and, hence, the amount of unpaid wages and overtime that is actually due and owing. Accordingly, in today's Order, the Court is unable to fashion a final order of relief in this case, and, instead, will merely narrow the issues to be tried.

More specifically, according to the record before the Court, defendant did not keep a precise record of the hours worked by plaintiffs. (Pls.' Resp. [42 at 15-16].)(quoting defendant's corporate representative as saying there has never been a record of the number of hours the salespeople work). In situations where there is insufficient hour/payroll records, the Supreme Court has spelled out the burden of proof applicable in determining whether an employee is entitled to back pay under the FLSA. *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 471 (11th Cir. 1982.) The burden is the following:

> In such a situation, we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and <u>if he produces sufficient evidence to show the amount and extent of that work</u> as a matter of just and reasonable inference. The <u>burden then shifts to the employer</u> to come forward with evidence of the precise amount of work performed or <u>with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence</u>. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

(*Id.*)(citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946))(emphasis added).

AO 72A
(Rev.8/82)

In this case, in support of their damages claim, plaintiffs have submitted rough summary sheets showing overtime hours for each week that plaintiffs worked for defendant. (See Pls.' Resp. [42 at Ex. 3-4].) As originally filed, these summary sheets are not competent evidence, as they were not signed or authenticated in any way by any of the plaintiffs. Defendant pointed out this deficiency in its response to plaintiffs' memorandum addressing the relief to be awarded in this case. (Def.'s Resp. [46 at 5].) Plaintiffs then attempted, but failed to, correct their original procedural shortcoming by submitting "sworn" declarations authenticating the summary sheets with their reply memorandum. Unfortunately, these declarations are also unsworn, and are not competent evidence, as they are neither signed by the seal of a notary public nor in compliance with the provisions of 28 U.S.C. § 1746.[3] See Burnett v.

---

[3] "Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
    (1) If executed without the United States: 'I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).

11

*Stagner Hotel Courts, Inc.*, 821 F. Supp. 678, 683 (N.D. Ga. 1993)(Carnes, J.)(concluding that list that was not attached to an affidavit, not certified, and did not reveal the source of the information on the list was not competent evidence). In addition to challenging the authenticity of the summary sheets submitted by plaintiffs, defendant also submits business records showing that plaintiffs were off on some of the days plaintiffs claim to have been working, including standard business holidays such as Christmas, Labor Day, and the Fourth of July. (Def.'s Resp. [46 at 9-10].)

Based on the above, the Court concludes that there is a disputed issue of fact as to how many hours plaintiffs' worked while in defendant's employ. Accordingly, it will be for a jury to decide whether it believes plaintiffs' testimony and evidence about the hours they worked each week, and the time they did or did not take off, or instead credits defendant's testimony and evidence concerning the same. As the Court understands the calculation of FLSA damages, *see supra* at 9 n.2, the jury will need to decide, for any week that

---

(Signature)'.

    (2) If executed within the United States, its territories, possessions, or commonwealths: 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
(Signature).'"

28 U.S.C. § 1746 (2006).

the parties do not agree on, the total number of hours that were worked by each plaintiff.

This will clearly be a tedious, laborious, and unpleasant process. To minimize this burden, the parties are ordered to **meet and confer** to identify, on a separate summary sheet for each plaintiff, each week the parties are in disagreement as to the hours worked. As to each of those weeks, the Court directs each party to list the total number of hours each contends was worked in that week. To the extent that there are any weeks for which the parties are in agreement as to the total number of hours worked, the Court directs the parties to submit a separate sheet for each plaintiff identifying the weeks that are not in dispute and the total number of hours worked in that week.

Further, the Court understands the parties to be in agreement as to the accuracy of defendant's records with respect to the date and amount of commissions paid. (Reply Resp. [48 at 16].) ("For the purpose of this case, Plaintiffs do not contest the records kept by Defendant on the commission paid."). Accordingly, all summary sheets should contain a column reflecting the amount of commission <u>earned</u> during that period and whether or not the commission was actually paid out during that period or in a subsequent period.[4] See 29 C.F.R.

---

[4] According to plaintiffs' Complaint, plaintiff Griffin was not paid in commissions, but, instead received $12/hour for her

13

§ 778.119 (2006). As it has been difficult obtaining clear briefing from the parties, the Court has drafted a sample chart. The parties' own chart should conform substantially to the following form.

**Sheet A - Weeks in Dispute (sample)**

| Name of Plaintiff: | | | |
|---|---|---|---|
| **Week Of:** | **Plaintiffs' Position on Hours Worked** | **Defendant's Position on Hours Worked** | **Commission Earned During this Period** |
| 7/5/04 | 46 | 38 | $1,000 |
| 7/19/04 | 52 | 43 | $0 |

**Sheet B - Weeks Not in Dispute (sample)**

| Name of Plaintiff: | | |
|---|---|---|
| **Week Of:** | **Hours Worked** | **Commission Earned During this Period** |
| 7/12/04 | 46 | $500 |
| 7/26/04 | 32 | $0 |

B.   **Statute of Limitations**

Under 29 U.S.C. § 255, whether a two or three-year statute of limitations applies to an action to recover unpaid wages and overtime under the FLSA depends on whether or not defendant's actions were

---

work as a floating sales agent that traveled to various communities. (Compl. at ¶ 14.) Thus, plaintiff Griffin's summary sheet should show the amount of hourly compensation she received each week rather than the amount of commissions she earned.

willful.[5]  This action was commenced on April 6, 2004. Plaintiff Griffin worked for defendant from July 7, 2003 until November 20, 2003. (Compl. at ¶ 14.)  Plaintiff Billingslea worked for defendant from December 18, 2002 until October 1, 2003. (*Id.* at ¶ 11.) Plaintiff McNeal worked for defendant from September 23, 2002 until October 27, 2003. (*Id.* at ¶ 12.)  Plaintiff Williams worked for defendant from October 29, 2002 until July 2, 2003. (*Id.* at ¶ 13.) Based on the above dates, all of the plaintiffs' potential claims would be covered even by just a two-year statute of limitations. Accordingly, the Court does not need to decide whether defendant's actions were "willful."

### C. Liquidated Damages

In addition to any minimum wage and overtime due, plaintiffs ask the Court to award liquidated damages pursuant to 29 U.S.C. §

---

[5] "Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended [29 U.S.C.A. § 201 et seq.], the Walsh-Healey Act [41 U.S.C.A. § 35 et seq.], or the Bacon-Davis Act [40 U.S.C.A. § 276a et seq.] . . .if the cause of action accrues on or after May 14, 1947--may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued . . ." 29 U.S.C. § 255 (2006).

216(b).[6] (Pls.' Resp. [42 at 3].) "Liquidated damages are calculated by doubling the amount of unpaid minimum wages or overtime awarded to the plaintiff by the jury." ELLEN C. KEARNS, THE FAIR LABOR STANDARDS ACT §17.IV.C.2.b (BNA Books 1999). "[L]iquidated damages are mandatory absent a showing of good faith." *Spires v. Ben Hill County*, 980 F.2d 683, 689 (11th Cir. 1993). In any FLSA action, the defense of good faith must be pled and proved by the employer. *Id.* The employer must show, "to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." *Id.* (citing 29 U.S.C. § 260)(internal quotations omitted). More specifically, "[a]n employer who seeks to avoid liquidated damages bears the burden of proving that its violation was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict. An employer who knew or had reason to know that the FLSA applied, [cannot] establish good faith as a defense." *Id.* (internal citation and quotation omitted).

The good faith defense has both a subjective and objective

---

[6] "Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C.A. § 216(b) (2006).

16

component.  First, "[t]o satisfy the subjective 'good faith' component, the employer has the burden of proving that it had an honest intention to ascertain what the Act requires and to act in accordance with it." *Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562, 1566 (11th Cir. 1991)(internal citation and quotation omitted).  The objective component requires the employer to show, "that the employer had reasonable grounds for believing that its conduct comported with the Act." *Id.*

Here, defendant asserts the good faith defense to argue that liquidated damages should not be awarded.  Defendant maintains that it acted in good faith based upon its reasonable belief that plaintiffs were engaged in "outside-sales" and, therefore, were exempt from the FLSA's wage and hour requirements. (Def.'s Resp. [46 at 21].)  Defendant's CEO, Bray Deavours, states in his affidavit that he reached this conclusion only after consulting with attorneys and the company accountant. (*See id.*)  Mr. Deavours testifies further that his understanding is that the industry standard for compensating real estate agents like plaintiffs is with straight commission on direct sales of homes. (*See id.*)  Defendant further emphasizes that there was a lack of legal precedence regarding the central issue presented in this case.

The Court has reviewed the affidavit of defendant's CEO in its entirety, and, having done so, is satisfied that defendant had an

17

honest intention to ascertain what the FLSA requires and to act in accordance with it. In other words, defendant has satisfied the subjective component of the good faith defense. Further, given the lack of legal authority on the applicability of the outside sales exemption to real estate agents assigned to a model home sales center in a subdivision, the Court concludes that defendant had reasonable grounds for believing that its conduct was in compliance with the FLSA. Indeed, this conclusion is reinforced by the existence of the April 21, 1964 opinion letter from the Department of Labor's Wage-Hour Administrator wherein the administrator concluded that a real estate salesman who uses a model home as his headquarters may be considered an outside salesperson who is customarily and regularly engaged away from his employer's place or places of business. (See Order [40] at 11.) Defendant has thus satisfied the subjective and objective components to the good faith defense. Accordingly, the Court exercises its sound discretion to conclude that liquidated damages will not be awarded in this case. 29 C.F.R. § 790.22 (2006).[7]

---

[7] "Section 11 of the Portal Act provides that in any action brought under the Fair Labor Standards Act to recover unpaid minimum wages, unpaid overtime, compensation, or liquidated damages, <u>the court may</u>, subject to prescribed conditions, <u>in its sound discretion award no liquidated damages</u> or award any amount of such damages not to exceed the amount specified in section 16(b) of the Fair Labor Standards Act." 29 C.F.R. § 790.22 (2006)(emphasis added).

**D.    Prejudgment Interest**

In this circuit, "[p]laintiffs may not recover both liquidated damages and prejudgment interest under the FLSA." *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987). Like liquidated damages, an award of prejudgment interest is intended to compensate prevailing plaintiffs for losses sustained as a result of plaintiffs not receiving payments they were legally entitled to when those payments were due. Here, the Court has determined that the good faith defense is available, and, accordingly, that there will be no award of liquidated damages. At the same time, the Court concludes that an award of prejudgment interest in this case is a just and reasonable means of ensuring that plaintiffs are fully compensated for losses they sustained as a result of being denied the use of money to which they were legally entitled.[8]

---

[8] In concluding, today, that plaintiffs are entitled to prejudgment interest despite there being no award of liquidated damages, the Court joins the Third, Fourth, Sixth, Eighth and Ninth Circuits, all of which have concluded that prejudgment interest is available even when no liquidated damages are awarded. The Court departs from the Second, Third, and Fifth Circuits that have concluded that employers that are able to avoid liquidated damages by establishing the good faith defense may not be assessed prejudgment interest on back pay awards. *See* ELLEN C. KEARNS, THE FAIR LABOR STANDARDS ACT §17.IV.C.3.a (BNA Books 1999). Though the *Joiner* case cited above strongly implies that prejudgment interest is available in the Eleventh Circuit even where there is no award of liquidated damages, the Court has not found, and the parties have not cited, a case from this circuit directly addressing the issue.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Renewed Motion for Summary Judgment [45]. As noted, unless the parties are able to reach a settlement, a trial will be held to determine the number of hours worked by each plaintiff. The Court **DIRECTS** the parties to jointly submit, along with a Consolidated Pretrial Order, the summary sheets described, *supra* at 15, within **forty-five (45)** days of this Order. Briefing on the specifics of how to properly calculate the unpaid wages and overtime plaintiffs are owed will be due at the same time. To the extent the parties are able to agree on the specifics of how to calculate the amount of unpaid wages and overtime, the parties may file a joint submission. To the extent the parties are unable to agree on how to calculate the amount of unpaid wages and overtime, the parties may file individual briefs simultaneously. The Court will reserve, to the conclusion of this case, the question of whether or not, pursuant to 29 U.S.C. § 216(b), to award reasonable attorney's fees and costs in this action.

SO ORDERED, this _15_ day of March, 2007.

/s/ Julie E. Carnes
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)