IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUL 20 2007

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

| | |
|---|---|
| IRENE BILLINGSLEA, NICHELLE GRIFFIN, JWANA McNEAL, and MONIQUE KITA WILLIAMS<br><br>Plaintiffs,<br><br>v.<br><br>BRAYSON HOMES, INC.<br><br>Defendant. | CIVIL ACTION NO.<br><br>1:04-CV-00962-JEC |

## O R D E R & O P I N I O N

This case is presently before the Court on defendant's Motion for Relief from Judgment or Order [51], plaintiffs' Motion for Extension of Time [56], and defendant's Motion to Supplement its Reply in Support of its Motion for Relief from Judgment or Order [59]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that Defendant's Motion for Relief from Judgment or Order [51] should be **GRANTED**, plaintiff's Motion for Extension of Time [56] should be **GRANTED**, and defendant's Motion to Supplement [59] should be **GRANTED**.

AO 72A
(Rev.8/82)

## BACKGROUND

The facts underlying this action are discussed in detail in the Court's prior summary judgment order. (Order [40].) Briefly, defendant is a residential home builder and real estate developer. (Statement of Material Facts ("DSMF") [32] at ¶¶ 1-2.) Defendant hired plaintiffs as real estate salespeople, to sell newly constructed homes in various subdivisions that defendant was developing. (*Id.* at ¶¶ 3, 11.) Plaintiffs worked out of model homes temporarily set up as sales centers in the subdivisions to which they were assigned. (*Id.* at ¶¶ 11-12.) Plaintiffs did not receive an hourly wage; instead, they were paid on commission at the close of each sale. (*Id.* at ¶ 6.)

Plaintiffs brought this action under the Fair Labor Standards Act ("FLSA") to recover unpaid wages and overtime. (Compl. [1].) Defendant filed a motion for summary judgment on plaintiff's claims. (Def.'s Mot. for Summ. J. [32].) In support of its motion, defendant argued that plaintiffs were exempt from the minimum wage and overtime pay requirements of the FLSA because they worked in the capacity of "outside salespersons." (*Id.*) The Court denied defendant's motion, concluding that plaintiffs did not qualify as "outside salespersons" as defined by § 213 of the FLSA and its implementing regulations, including § 29 C.F.R. § 541.500. (Order [40].)

Defendant has now filed a motion for relief from the Court's

2

summary judgment order based on an intervening change in the law.[1] (Def.'s Mot. for Relief from J. or Order [51].) In support of its motion, defendant cites two recent DOL opinion letters concluding that employees who are similarly situated to plaintiffs qualify as "outside salespersons" under the FLSA and the applicable regulations.

## DISCUSSION

The FLSA exempts "outside salesmen" from its minimum wage and maximum hour requirements. 29 U.S.C. § 213(a)(1). DOL regulations defines "outside salesman" as an employee:

(1) Whose primary duty is:

    (i) making sales within the meaning of section 3(k) of the Act,[2] or

    (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

(2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.500(a).

---

[1] See FED. R. CIV. P. 60(b)(providing for relief from a final judgment or order in limited circumstances) and *Lamar Adver. of Mobile, Inc. v. City of Lakeland, Florida,* 189 F.R.D. 480, 489 (M.D. Fla. 1999)(noting that a district court is justified in reconsidering a prior order under Rule 60(b) when there is an intervening change of law).

[2] "Sales within the meaning of section 3(k) of the Act include the transfer of title to tangible property." 29 C.F.R. § 541.501(b) (2006).

3

In its summary judgment order, the Court concluded that plaintiffs were not "customarily and regularly engaged away from the employer's place . . . of business." (Order [40].) The Court reached this conclusion by first defining defendant's place of business as "the subdivision community of new homes within which each particular plaintiff was assigned." (*Id.* at 19-20.) Although plaintiffs were required to travel to sales meetings and other events outside the community several times a week, the parties agreed that plaintiffs performed the great majority of their duties within the community. (*Id.*) The Court thus concluded that plaintiffs did not "customarily and regularly" leave the "employer's place of business." (*Id.* at 19.)

At the time of the Court's decision, there was little available guidance on the terms "customarily and regularly" and "employer's place of business," aside from a 1964 DOL opinion letter.[3] In the

---

[3] The regulations state the following:

Away from employer's place of business.
An outside sales employee must be customarily and regularly engaged 'away from the employer's place or places of business.' The outside sales employee is an employee who makes sales at the customer's place of business or, if selling door-to-door, at the customer's home. Outside sales does not include sales made by mail, telephone or the Internet unless such contact is used merely as an adjunct to personal calls. Thus, any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business, even though the employer is

4

opinion letter the administrator stated that:

> [i]n the case of salesmen stationed in a model home on a tract from which parcels of real property are being sold with or without improvements, leaving the model home . . . would meet the requirement of the definition, so far as making sales 'away from' the employer's place of business is concerned. This is true even though all of the property shown to prospects by the salesman is within the tract on which the model home is located.

Wage and Hour Div. Op. Letter, April 21, 1964, available at 1964 DOLWH LEXIS 198. The Court was not persuaded by the reasoning of the 1964 opinion letter, which it found to be conclusory. (Order [40] at 21.) The Court also noted that the letter dealt with real estate agents who, unlike plaintiffs, customarily and regularly visited potential customers' homes and offices, an important factual distinction. (*Id.* at 20-21.)

Following the Court's decision, the DOL issued an opinion letter that addresses the precise question presented by this case: whether real estate salespeople who work out of model homes, set up as

---

> not in any formal sense the owner or tenant of the property. However, an outside sales employee does not lose the exemption by displaying samples in hotel sample rooms during trips from city to city; these sample rooms should not be considered as the employer's places of business. Similarly, an outside sales employee does not lose the exemption by displaying the employer's products at a trade show. If selling actually occurs, rather than just sales promotion, trade shows of short duration (i.e., one or two weeks) should not be considered as the employer's place of business.

29 C.F.R. § 541.502 (2006).

temporary sales facilities in a developing community, are "outside sales employees" under § 13(a) of the FLSA and its implementing regulations. *See* Wage and Hour Div. Op. Letter 2007-2, January 25, 2007 ("FLSA 2007-2")(attached to Def.'s Mot. for Relief [51] at Ex. 3). Like plaintiffs, the real estate salespeople in FLSA 2007-2 performed most of their duties in a model home located in a developing community, but were required to leave the home for one or two hours a day, once or twice a week, to engage in selling or sales-related activities. (*Id.*) These activities included: meeting with prospects, showing properties and communities to prospects, touring and demonstrating model homes and home sites, and engaging in a wide variety of marketing efforts within and outside the community. (*Id.*) A significant portion of the employees' time was spent with customers inside the model home performing sales support activities, such as completing paperwork, creating customer contact cards and promotional materials, calling realtors, learning about the homes, and similar tasks. (*Id.*)

Based on these facts, the administrator concluded that the real estate salespeople qualified as "outside sales employees" because: (1) their primary duty was selling homes and most of their time was spent on sales-related activities; and (2) they were "customarily and regularly engaged away from the employer's place of business." (*Id.*) In making the latter conclusion, the administrator defined "the

6

employer's place of business" to include only the model home, as opposed to the entire community. (FLSA 2007-2 at 4.) Using this definition, a salesperson's time spent showing homes or performing other sales-related activities in the community, but outside of the model home, constitutes time "engaged away from the employer's place of business." (*Id.*) See also Wage and Hour Div. Op. Letter 2007-1, January 25, 2007 (attached to Def.'s Mot. for Relief [51] at Ex. 3)("the lots for sale are not part of the employer's place of business but rather are the products to be sold by the sales associates").

As to the frequency of time spent performing these activities, the administrator explained that:

> The phrase 'customarily and regularly' means a frequency that must be greater than occasional but which, of course, may be less than constant. Tasks or work performed 'customarily and regularly' includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks.

FLSA 2007-2 at 3. Consequently, the administrator concluded, salespeople who left the model home one or two hours a day, once or twice a week, to engage in sales-related activities in the community, were "customarily and regularly engaged away from the employer's place . . . of business." (*Id.* at 4.)

FLSA 2007-2 is similar in every relevant respect to the case that is now before the Court. Plaintiffs are former real estate

7

salespeople, whose primary duty was to sell homes in subdivisions being developed by defendant. (DSMF [32] at ¶¶ 3, 11.) They worked out of model homes set up as temporary sales facilities in developing communities, but they spent a significant portion of their time away from the model home, including at least: (1) three hours per week attending construction meetings; (2) twelve hours per week walking spec houses in the community; and (3) fours hours per week shopping the competition. (Id. at ¶¶ 18-33; Pls.' Resp. to Def.'s Mot. for Relief [55] at 7-8.) Plaintiffs also left the community on a weekly basis to: (1) attend sales meetings; (2) travel to defendant's corporate office to complete sales transactions; and (3) deliver marketing materials to agents and brokers. (Id.) Applying the reasoning of FLSA 2007-2 to these facts, plaintiffs clearly meet the definition of "outside sales employees." The only question is whether to adopt the DOL's construction, or to adhere to the Court's prior interpretation of § 541.500.

DOL opinion letters are not binding, but they carry "considerable weight." *Stern v. Int'l Bus. Mach. Corp.*, 326 F.3d 1367, 1372 (11th Cir. 2003). *See also Arriaga v. Florida Pac. Farms, L.L.C.*, 305 F.3d 1228, 1238 (11th Cir. 2002)(noting that DOL opinion letters "'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance'")(quoting *Skidmore v. Swift*, 323 U.S. 134, 140 (1944)).

When a regulation is ambiguous, the implementing agency's interpretation of its language is entitled to deference, and must be upheld "so long as it is reasonable." *Sierra Club v. Johnson*, 436 F.3d 1269, 1274 (11th Cir. 2006). *See also Sierra Club, Inc. v. Leavitt*, --F.3d--, 2007 WL 1649987 *5 (11th Cir. 2007)("courts must give deference to an agency's reasonable interpretation of its own regulations").

There is no fixed and absolute meaning to the relevant terms in § 541.500: "customarily and regularly" has a range of possible meanings and "employer's place of business" can be defined broadly or narrowly. The DOL clarified these concepts, giving them a more definite meaning for purposes of § 541.500, in FLSA 2007-2. The DOL's interpretation of § 541.500 is reasonable, and should be applied to this case.

Accepting the DOL's more restrictive definition of "an employer's place of business" to include only the model home in which each plaintiff worked, plaintiffs were "engaged away from the employer's place of business" whenever they: (1) walked spec houses and lots within the community; (2) attended off-site sales meetings; (3) attended construction meetings; (4) traveled to defendant's corporate office; (5) delivered flyers and other marketing materials to the offices of local agents and brokers; and (6) shopped the competition. (DSMF [32] at ¶¶ 18-33; Pls.' Resp. to Def.'s Mot. for

9

Relief [55] at 7.) Plaintiffs acknowledge that they left the model home to participate in all of these activities on a weekly basis, and many on a daily basis. (*Id.*) Accepting also the DOL's interpretation of the phrase "customarily and regularly"--as a frequency that is greater than occasional but less than constant, generally occurring on a weekly basis--plaintiffs meet § 541.500's requirement that they be "customarily and regularly engaged away from the employer's place . . . of business."

The Court did not decide in its summary judgment order whether plaintiffs met the other requirement of "outside sales employees"-- that is, whether their "primary duty [was] making sales within the meaning of section 3(k) of the Act." 29 C.F.R § 541.500(a).[4]

---

[4] As used in § 541.500, "primary duty" is defined to mean:

> the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R § 541.700 (2006).

10

Plaintiffs concede that their primary responsibility was selling newly constructed homes in the subdivisions to which they were assigned. (DSMF [32] at ¶¶ 11, 19.) Moreover, as applied to outside sales employees, the term 'primary duty' is defined to include:

> work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections . . . . Other work that furthers the employee's sales efforts also shall be regarded as exempt work including, for example, writing sales reports, updating or revising the employee's sales or display catalogue, planning itineraries and attending sales conferences.

29 C.F.R. § 541.500(b). All of the job activities that plaintiffs describe, with the exception of training new sales associates, were either incidental to, or designed to improve, plaintiffs' efforts to sell homes. (See Pls.' Statement of Material Facts [36] at ¶¶ 2-14; Pls.' Resp. to Def.'s Mot. for Relief [55] at 7-8. See FLSA 2007--2 at 3-4 ("such tasks as completing sales-related paperwork, prospecting customers, engaging in a wide variety of marketing efforts including creating customer contact cards and promotional materials, following up with customers, scheduling appointments, calling realtors to generate interest in the homes, and learning about the homes . . . are regarded as exempt work"). Plaintiffs thus easily satisfy the "primary duty" requirement of § 541.500.

Applying the reasoning of the DOL's recent opinion letter interpreting § 541.500, the Court finds that plaintiffs worked for

11

defendant in the capacity of "outside sales employees." As such, plaintiffs are exempt from the FLSA's minimum wage and overtime pay requirements, and defendant is entitled to summary judgment on plaintiffs' FLSA claims. Accordingly, defendant's motion for relief from the Court's prior summary judgment order should be **GRANTED**.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendant's Motion for Relief from Judgment or Order [51], **GRANTS** plaintiffs' Motion for Extension of Time [56], and **GRANTS** defendant's Motion to Supplement its Reply in Support of its Motion for Relief [59].

SO ORDERED, this _19_ day of July, 2007.

*/s/ Julie E. Carnes*
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)